UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| UNITED STATES OF AMERICA, | Plaintiff, |
|---|---:|
| v. | Criminal Action No. 3:17-cr-141-DJH |
| DONALD LYNN MARTIN, | Defendant. |

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

On April 20, 2018, a jury convicted Defendant Donald Martin of attemping to entice a person under the age of eighteen years to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (Docket No. 83; *see also* D.N. 1) The jury also convicted Martin of traveling from Indiana to Kentucky for the purpose of engaging in sexual activity with a fifteen-year-old person, in violation of 18 U.S.C. § 2423(b). (D.N. 83; D.N. 1) Martin now moves for judgment of acquittal and a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33. (D.N. 85) In support of his motion, Martin raises three arguments. He first contends that his rights under the Speedy Trial Act were violated. (*Id.*, PageID # 498–99) Martin also maintains that the government failed to carry its burden to rebut his entrapment defense. (*Id.*, PageID # 500) And finally, he takes issue with the Court's jury instructions and its handling of a question it received from the jury during deliberations. (*Id.*, PageID # 500–501) For the reasons set forth below, Martin's objections do not require judgment of acquittal or a new trial. The Court will therefore deny his motion.

**I.    Speedy Trial Act**

Martin moves for dismissal of this action based on an alleged violation of his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161–74. As an initial matter, the United States maintains

1

that Martin waived his STA objection by failing to move for dismissal prior to trial. (D.N. 95, PageID # 711–12) Under Federal Rule of Criminal Procedure 12, an objection based on "a violation of the constitutional right to a speedy trial" must be raised before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(iii); *see also* 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal *prior to trial* . . . shall constitute a waiver of the right to dismissal under [the STA]." (emphasis added)). However, as Martin argues in his reply brief (D.N. 99), a formal motion prior to trial is not required.[1] "[A] defendant's oral objections [suffice] . . . so long as the defendant brings to the [C]ourt's attention his belief that his STA rights have been violated." *United States v. Brown*, 819 F.3d 800, 823 (6th Cir. 2016). Martin raised objections to continuance in his response to the United States' December 13, 2017 motion to continue. (D.N. 28; *see also* D.N. 25) He also raised objections orally at a status conference on January 26, 2018. (*See* D.N. 47) The Court therefore finds that Martin timely objected to the alleged STA violation.

As to the merits of his STA objection, Martin argues that the Court erred in granting the United States' December 13, 2017 motion to continue. (D.N. 85, PageID # 499) He also contends that the delay attributable to his motions to suppress should not be excluded from the STA calculation because the motions were "due to the government[] having provided new, additional, Rule 16 material to the defense." (*Id.*) Neither argument is persuasive.

First, the Court did not err in granting the United States' motion to continue. As explained in its prior order, the Court may grant a continuance when failure to do so "would unreasonably deny . . . the Government continuity of counsel, or would deny. . . the attorney for

---

[1] Notably, Martin's reply brief solely concerns the waiver issue. It does not address the other issues raised in the original motion. (*See* D.N. 99)

the Government the reasonable time necessary for effective preparation." (D.N. 30, PageID # 201) 18 U.S.C. § 3161(h)(7)(B)(iv). On December 13, 2017, the second prosecutor assigned to this action moved to continue the jury trial due to the first prosecutor's medical leave of absence. (D.N. 25) In light of the request, the Court found that continuing the trial for twenty-seven days would provide the Government continuity of counsel and the reasonable time necessary for effective preparation and that the delay should therefore be excluded in computing the time within which the trial must commence under the STA. (D.N. 30) *See also* 18 U.S.C. § 3161(h)(7)(B)(iv); *United States v. Strickland*, 342 F. App'x 103, 110–111 (6th Cir. 2009) ("The district court determined that 'failure to grant a continuance . . . would unreasonably deny Defendant *and the Government* continuity of counsel' . . . . The district court did not err." (emphasis added)). Martin presents no authority indicating that the Court erred in that conclusion. (*See* D.N. 85) Indeed, he merely rehashes the arguments that this Court rejected in granting the motion to continue. (*Id.*) Accordingly, the period of delay from January 2, 2018 to January 29, 2018 was properly excluded from the STA calculation.

Second, under the STA, any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excludable. 18 U.S.C. § 3161(h)(1)(D); *United States v. Sutton*, 862 F.3d 547, 553 (6th Cir. 2017) (finding that the period of delay from the defendant's filing of his motion to dismiss until the Court's resolution of the motion was excludable under the STA). In the course of this matter, Martin filed a motion to reconsider the Court's Order of Detention on November 13, 2017 (D.N. 16); a pretrial motion for discovery on December 11, 2017 (D.N. 24); motions to suppress on February 9, 2018 (D.N. 48; D.N. 49); and a motion in limine on March 30, 2018 (D.N. 62). The Court ruled on Martin's motion for discovery on December 14, 2017 (D.N. 27);

pretrial motion for discovery on December 21, 2017 (D.N 30); motions to suppress on March 28, 2018 (D.N. 60); and motion in limine on April 13, 2018 (D.N. 72).

Thus, pursuant to § 3161(h)(1)(D), the periods of delay from November 16, 2017 to December 21, 2017; February 9, 2018 to March 28, 2018; and March 30, 2018 to April 13, 2018, should be excluded from the STA calculation.[2] (*See* D.N. 47, PageID # 271) Martin's sole contention to the contrary is unavailing. Martin cites no caselaw in support of his position that the period of delay attributable to his motions to suppress should not be excluded because they were due to the government having provided him "new material" on the eve of trial. (*See* D.N. 85) Nor could the Court on its own find authority indicating that it must inquire as to the cause of a pretrial motion prior to excluding it from the STA calculation.[3] In sum, excluding the periods of delay cited above, the period from Martin's initial appearance and arraignment on October 25, 2017 to his trial on April 17, 2018, did not exceed the 70-day STA requirement.[4]

---

[2] Moreover, pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), (h)(7)(B)(ii), and (h)(7)(b)(iv), the Court properly excluded the period of delay from January 29, 2018 to April 16, 2018, attributable to Martin's motion to continue the trial of this matter. (*See* D.N. 47, PageID # 2700; D.N. 52, PageID # 336; *see also* D.N. 46)

[3] At most, the Sixth Circuit suggests that "[g]overnmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government." *United States v. Ferreira*, 665 F.3d 701, 705–06 (6th Cir. 2011). Those circumstances do not exist here. On the eve of trial, Martin informed the United States of his intention to raise an entrapment defense. (D.N. 42) In response, the United States singled out certain rebuttal evidence that it intended to use at trial and of which Martin was already in possession. (*See* D.N. 50, PageID # 310) In Martin's view, this evidence constituted "new material." However, even if so, this fact would not weigh against the government because the Court finds that the United States' course of action was not motivated by bad faith, harassment, etc.

[4] The STA clock begins from the filing date of the indictment or from the date the defendant has appeared before a judicial officer of the Court, whichever date last occurs. *See* 18 U.S.C. § 3161(c)(1). Here, Martin's first appearance occurred after the United States' filing of the indictment. (*See* D.N. 1; D.N. 7) It is therefore the relevant start date.

## II. Judgment of Acquittal

Martin also moves for judgment of acquittal pursuant to Rule 29. (D.N. 85, PageID # 500) In this action, the United States charged Martin with attempt to violate 18 U.S.C. § 2422(b). (D.N. 1) Martin was charged with attempt because the minor he sought to persuade to engage in sexual activity was not in fact a minor but rather an undercover agent. (*See* D.N. 90; D.N. 91) At trial, Martin presented an entrapment defense. He now argues that the evidence presented at trial failed to establish beyond a reasonable doubt that he was not entrapped. (D.N. 85, PageID # 500; *see also* D.N. 86, PageID # 503–04)

"A district court may enter a judgment of acquittal if the government's proofs are legally insufficient to sustain a conviction." *United States v. Paulus*, 894 F.3d 267, 274 (6th Cir. 2018). "In resolving this question, the [C]ourt must view the evidence in the light most favorable to the prosecution, and may not enter a judgment of acquittal if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (internal quotations omitted).

"A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002). "[W]hen a defendant uses an entrapment defense, it is the government's burden to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." *United States v. Franco*, 484 F.3d 347, 351 n.4 (6th Cir. 2007). "Predisposition 'focuses upon whether the defendant was an unwary innocent or instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime.'" *Khalil*, 279 F.3d at 365 (quoting *Matthews v. United States*, 485 U.S. 58,

63 (1988) (internal quotations omitted)). The Sixth Circuit has identified five factors that are relevant in determining predisposition:

> [1] the character or reputation of the defendant, including any prior criminal record; [2] whether the suggestion of the criminal activity was initially made by the Government; [3] whether the defendant was engaged in the criminal activity for profit; [4] whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and [5] the nature of the inducement or persuasion supplied by the government.

*Id*. (citing *United States v. Barger*, 931 F.2d 359, 366 (6th Cir. 1991)). In satisfying its burden, the United States may prove predisposition with evidence obtained after the government's initial contact with the defendant. *United States v. Kussmaul*, 987 F.2d 345, 348–49 (6th Cir. 1993).

Viewing the *Khalil* factors in the light most favorable to the prosecution, *see Paulus*, 894 F.3d at 274, the Court finds that a rational trier of fact could find that the United States proved predisposition beyond a reasonable doubt. First, the United States presented evidence indicating that Martin had used Craigslist to meet "younger wom[e]n" for five to six years prior to his arrest. (*See* D.N. 16-2, PageID # 110–11; D.N. 90, PageID # 518–21). The evidence further indicated that Martin's pursuit was sexual in nature. In the Craigslist ad at issue, Martin wrote that he sought "a young girl to be [his] little kitten," that he was "STD free and vasectomy safe," and that he was looking for "daughter/daddy role play." (D.N. 90, PageID # 520–21) In light of the character evidence, a reasonable trier of fact could conclude that Martin sought a sexual encounter with a minor female prior to the government's initial contact.

Second, Martin, not the government, initially suggested the criminal activity. In the e-mail exchanges between Martin and the undercover agent, it was Martin who first steered the discussion to sexual topics, by asking the alleged minor whether she ever had sex with an older boyfriend. (D.N. 95-2, PageID # 733) In an e-mail shortly thereafter, Martin told the alleged

minor that "[he] would live to get in [her] pants . . . that plain enough[.]"[5] (*Id*., PageID # 739) At no point prior to these exchanges did the undercover officer broach the topic of sex. (*Id*., PageID # 725–32) Accordingly, a reasonable trier of fact could conclude that Martin initially suggested the criminal activity at issue.

Third, Martin was not reluctant to commit the offenses. Even after learning that the alleged minor was 15 years old, Martin persisted in speaking with her. (*Id*., PageID # 726–27) At one point, Martin even asked, "Are you a police officer or in any way associated with law enforcement or any agency dealing with minors?" (*Id*., PageID # 728) Indeed, Martin persisted in questioning the alleged minor, despite the undercover agent's attempts to end the discussion. (*Id.*, PageID # 726–27) Martin was also the first to suggest an in-person meeting. (*Id*., PageID # 742 ("Well first I want to meet you in person . . . . And just so you know I would never turn down a surprise.")). Moreover, prior to their arranged meeting, the undercover agent asked Martin, "[are you] sure [you] want to do it?" (*Id*., PageID # 744) Martin responded, "there is certainly the desire . . . but its [sic] not without some hesitation . . . do you want to do it?" (*Id*.) The undercover agent then told Martin, "Yea if [you] want to and go slow [I] do." (*Id*.) And Martin replied, "[Y]es we can take things slow. Let me know when I can see you." (*Id*., PageID # 745) A reasonable trier of fact could therefore conclude that Martin was not reluctant to commit the charged offenses.

Fourth, the nature of the government's inducement does not indicate that Martin's will was overcome. The Sixth Circuit has not articulated an extensive definition of inducement. *United States v. Geralt*, 682 F. App'x 394, 405 (6th Cir. 2017). However, "the government certainly may use undercover agents as an aid to law enforcement, and inducement must be

---

[5] Notably, these exchanges occurred after the undercover agent informed Martin that the alleged minor was 15 years old. (*See* D.N. 95-2)

something more than merely affording an opportunity or facilities for the commission of the crime." *Id.* (internal alterations, citations, and quotations omitted). Indeed, "[i]nducement requires an opportunity *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *Id.* (internal quotations omitted).

Here, the United States presented sufficient evidence to indicate that the undercover agent did not induce Martin into committing the charged crimes. Throughout his conversation with the alleged minor, Martin was the party to reinitiate after a break or a lull in the discussion. (D.N. 95-2, PageID # 726–27, 729, 734, 737, 744, 745, 746, 748) The only proactive actions taken by the undercover officer included giving Martin the alleged minor's personal e-mail address (*id.*, PageID # 730); sending him photos upon request (*id.*, PageID # 731, 736); and, after repeated suggestion on Martin's part, implying that the alleged minor was receptive to sexual advances. (*Id.*, PageID # 740) Moreover, there is simply no credible evidence that Martin possessed an alternative, non-criminal motive. He first broached the topic of sex (*id.*, PageID # 733), asked the alleged minor for pictures (*id.*, PageID # 730, 735), used aggressive sexual language later in the conversation (*id.*, PageID # 739–40), and suggested they meet in person. (*Id.*, PageID # 742) Indeed, Martin flatly said: "I have not had anyone in my life for a long time. So even in spite of your age I am willing to risk it." (*Id.*, PageID # 740) Martin also instructed the alleged minor to be careful "because [he is] way too old to go to jail." (*Id.*, PageID # 745) Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could conclude that Martin was not induced to commit the charged crimes.

The only factor weighing in Martin's favor is that he did not engage in the criminal actions for profit. However, because the four other *Khalil* factors weigh in favor of the

government, the Court finds that a reasonable trier of fact could conclude that Martin was predisposed to commit the crimes at issue. *Khalil*, 279 F.3d at 365. Judgment of acquittal is therefore unwarranted.

### III. Jury Instructions and Question

Martin raises two objections regarding the jury instructions. He first contends that the Court erred by "refus[ing] [his] request to include the additional elements of predisposition and entrapment in the Issues Instructions relating to [the charged crimes]." (D.N. 85, PageID # 500) Martin also argues that the Court erred in its resolution of a jury question, which was provided to the Court in writing by the jury foreman during deliberations. (*Id.*) Neither argument is persuasive.

A district court enjoys broad discretion "in crafting jury instructions and does not abuse its discretion unless the jury charge fails accurately to reflect the law." *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007) (internal quotations omitted). Martin presents no authority indicating that the Court's instructions failed to accurately reflect the law. (*See* D.N. 85; D.N. 86) Indeed, the Court's jury instructions concerning the charged crimes conformed to the Sixth Circuit Pattern Jury Instructions. (D.N. 82, PageID # 476–77) *See also* Sixth Circuit Pattern Criminal Jury Instruction §§ 16.09, 16.11; *id.* Use Note to § 16.09 ("If the charge is based on attempt, an instruction may be compiled by combining this instruction with the instructions in Chapter 5 Attempts."). And the Sixth Circuit Pattern Jury Instructions contemplate presenting the defense of entrapment as a separate instruction. *See id.* § 6.03. The Sixth Circuit has held that a trial court does not err where its jury instructions conform to the Pattern Jury Instructions. *See United States v. Ray*, 803 F.3d 244, 279 (6th Cir. 2015) (finding that the defendant failed to show that the trial court's jury instruction was erroneous where the jury instruction followed the

pattern instructions); *United States v. Beckman*, 624 F. App'x 909, 920 (6th Cir. 2015) ("The jury instructions accorded with this circuit's Pattern Criminal Jury Instructions §§ 16.01, *16.09* . . . and were consistent with the language of §§ 2251(a) and *2422(b)* . . . . There was no plain instructional error." (emphasis added)). The Court therefore properly declined to incorporate the elements of entrapment into the jury instructions.

Second, Martin's argument regarding the Court's handling of the jury question relies on a mischaracterization of what occurred at trial. According to Martin, the jury question concerned "whether the government was required to prove that Donald Martin was predisposed *prior* to the initial contact by [the government]." (D.N. 86, PageID # 504) And thus in Martin's view, "the answer [to] that question should have been a clear, concise and unambiguous 'yes' . . . . but [r]ather than directly answering that question . . . this [C]ourt felt obligated to answer a second companion question" regarding whether the government could prove predisposition with evidence obtained after the initial government contact. (*Id.*, PageID # 504–505) This is simply not, however, what occurred at trial. The jury question(s) read:

> [F]or entrapment, the Government must prove, beyond a reasonable doubt, that the defendant was already willing to commit the crime prior to first being approached . . . by a government agent . . . . Are we to use the evidence presented in court to determine whether or not Mr. Martin was already willing to commit the crime before first being approached by . . . [the] government agent . . . . Since the evidence was gathered after the contact by a government agent, does . . . the proof of willingness . . . [have] to exist prior to [the government contact].

(D.N. 96, PageID # 752) Thus, contrary to Martin's argument, the jury question did not simply concern the burden of proof regarding predisposition. Rather, the jury question presented multiple inquiries, the first of which concerned the use of evidence. In fact, defense counsel stated at trial that "[he] believe[d] that the answer to the first question is, 'You are confined to the evidence presented in this trial.'" (*Id.*, PageID # 754)

Moreover, although Martin now takes issue with the "companion question," at trial, defense counsel admitted that he was unsure as to what the jury was asking. (*Id.*, PageID # 754) Given this uncertainty, the Court did not err in crafting the following answer to the jury's question:

> As I instructed you earlier, yes, your decision must be based only on the evidence that you saw and heard here in court. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves. Based on all of the evidence, *decide if the government has proved that the defendant was already willing to commit the crime as described in [the entrapment instruction].* The government may prove the defendant's state of mind based solely on evidence obtained after the defendant's contact with the government agent posing as Jenna. Remember that all the instructions are important and you should consider them together as a whole.

(*Id.*, PageID # 775 (emphasis added)) The entrapment instruction—which was modeled after the Sixth Circuit Pattern Jury Instructions—in turn explains that the jury must find that the government proved Martin was "already willing to commit the crime *prior to* first being approached by government agents." (D.N. 82, PageID # 480 (emphasis added)) Thus, the Court's answer did not "allow[] the jury . . . to find [Martin] guilty, notwithstanding the failure of the government to prove disposition prior to the initial contact by [the government agent]."[6] (D.N. 86, PageID # 505) Rather, the instruction clearly informed the jury that while evidence obtained after the defendant's contact with the government agent may be used to prove predisposition, the jury must ultimately "decide if the government has proved that the defendant was already willing to commit the crime" prior to first being approached by the government agent. (D.N. 96, PageID # 775; *see also* D.N. 82, PageID # 480) Moreover, despite Martin's

---

[6] Accordingly, contrary to Martin's suggestion, *United States v. Kopstein*, 759 F.3d 168 (2d Cir. 2014), and *United States v. Lasuita*, 752 F.2d 249 (6th Cir. 1985), are inapplicable. In *Kopstein*, the wording of the court's response to the jury question permitted a guilty verdict even though the elements of entrapment were not satisfied. 759 F.3d at 178. Similarly, in *Lasuita*, the court erroneously instructed the jury that the government need not prove predisposition in order to attain a guilty verdict. 752 F.2d at 254.

challenge here, defense counsel ultimately agreed to the Court's response after discussion. (D.N. 96, PageID # 769 ("Judge, I will not object to what you've written here . . . . I agree and nothing more is needed.")) *See United States v. Newsom*, 452 F.3d 593, 607 (6th Cir. 2006) ("[The defendant] waived any challenge by failing to object to the jury instruction."). The Court therefore did not err in its answer to the jury's question.

## IV.     Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Martin's motion for judgment of acquittal and a new trial (DN. 85) is **DENIED**.

August 14, 2018

                                                  **David J. Hale, Judge**
                                                  **United States District Court**